# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| JEFFERY TANNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-cv-05005-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Jeffery Tanney seeks review of the Administrative Law Judge's decision denying his application for Social Security benefits. For the following reasons, the case is remanded for reconsideration.

I.   **Background**

   **A. Tanney's Medical History**

Tanney seeks Disability Insurance Benefits and Supplemental Security Income for disabilities with an onset date of February 1, 2012. His alleged impairments stem from both physical and mental ailments. The record reveals that he has been receiving consistent treatment since late 2011.

In December 2011, Tanney reported to Dr. Jerry Jumper because he was having difficulty concentrating at work and bilateral wrist pain. Ten days later he was admitted to the emergency room for feeling overwhelmed. A week post discharge, he returned to the emergency room after experiencing a panic attack. In January, Tanney returned to the

hospital emotionally upset and sobbing and reported that he had lost his home, job, and vehicle. He also reported to Dr. Jumper that his hands hurt which made it difficult for him to grip things, and that he was not sleeping well.

On January 17, 2012, Tanney began receiving treatment through the Ozark Center. He reported suicidal ideation, audio hallucinations, and was noted to be only somewhat focused with a sad, frustrated, anxious and tearful mood, broad-ranged, labile emotions, limited insight, and some circumstantial thought. He was diagnosed with major depressive disorder and ADHD by history. He was given a referral to case management due to his difficulty dealing with his daily care needs. Tanney was admitted to the hospital again on January 27 due to depression and suicidal thoughts.

On April 30, 2012, Tanney was admitted to the hospital with a plan to kill himself. He reported feeling like he wanted to sleep all the time and was discharged four days later with diagnoses of PTSD, major depression, anxiety, and ADHD.

Paul Gray, M.S., evaluated Tanney on August 1, 2012. During the visit Tanney had poor eye contact, difficulty staying on topic, and reported seeing people who were not there and feeling suicidal at times. His behavior was explosive and nearly out of control. On August 14, he began receiving case management services through the Ozark Center. He reported that he was "freaking out" and "going crazy" after his Adderall prescription ran out. The emergency room would not give him the medication. Dr. Jumper renewed his prescription on August 30. Even with the medication, Tanney continued to report feeling as though he was "going crazy" and that he had difficulty getting along with others.

2

On January 23, 2013, Tanney was examined by Dr. Stephanie Terrell. Dr. Terrell noted that Tanney was agitated and hostile about the reason for the referral, which was his mental health nurse's concern about possible drug-seeking behavior. Based on the Wechsler Abbreviated Scale of Intelligence, Second Edition ("WASI-II"); Repeatable Battery for the Assessment of Neuropsychological Stats Form A; Brown ADD Scales; and Million Clinical Miltiaxial Inventory-III, Dr. Terrell determined that Tanney had fairly marked intellectual deficits, severe impairments in his ability to remember information, difficulties with attention and concentration and lacked social initiative. Tanney was diagnosed with major depressive disorder, PTSD, generalized anxiety disorder, ADHD, and borderline intellectual functioning. Tanney periodically reported to his case manager that he was doing well, but from January through March also reported increased anxiety and depression, panic attacks, anxiety in unfamiliar places, and suicidal ideation.

On March 12, 2013 Tanney was admitted to the hospital due to a depressive episode and suicidal ideation. After discharge, Tanney reported that he wanted to go back to work and get a "fresh start." On May 1, Tanney reported that he had begun working at Butterball. However, by two weeks later he reported that he had quit his job because it caused him too much physical pain.

Tanney was admitted to the hospital again on June 3, 2013 on a 96-hour hold for depression and suicidal ideation. His labs were positive for benzodiazepines and methamphetamines. He was discharged on June 17.

Tanney testified at an administrative hearing on August 14, 2013, that his inability to concentrate was his biggest problem preventing him from working. He also testified that he had difficulty being around people. Tanney stated that he had episodes where he would isolate himself about twice a month. The episodes would last three to five days. He also testified to experiencing numbness in his fingers, especially when writing or doing other activities requiring constant use of his hands.

### B. ALJ Decision

The Administrative Law Judge ("ALJ") denied Tanney's request for disability benefits, concluding that he had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Tanney's severe impairments of obesity, carpal tunnel syndrome, ADHD, borderline intellectual functioning, major depressive disorder, somatization disorder, generalized anxiety disorder, post-traumatic stress disorder, and borderline personality disorder, he retained the following RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) in that the claimant can lift 50 pounds occasionally and 25 pounds frequently; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks; and push and/or pull to same weights; except the claimant can frequently, but not continuously, handle and feel; can perform simple tasks, not performed in a fast-paced production environment or as an integral part of a team, involving only simple, work-related decisions and, in general, relatively few work place changes; and can occasionally interact with co-workers and the general public.

[Tr. 19]. A vocational expert testified that with this RFC, an individual would be able to perform the requirements of occupations such as stuffer, document preparer, and order clerk.

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Tanney's testimony at the administrative hearing regarding the extent of his symptoms. The ALJ assigned significant weight to the opinion of Dr. Bowles, a non-examining physician who reviewed Tanney's medical records in October 2012. He assigned little weight to Dr. Terrell's opinion, and concluded that Tanney's testimony regarding the severity of his symptoms was not credible.

## II.     Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III.    Discussion

Tanney argues that the ALJ erred in formulating the RFC by (1) failing to properly weigh the medical evidence and (2) failing to perform a proper credibility analysis before discounting Tanney's own reports of his limitations.

5

### A. Weight of Medical Evidence

Tanney contends that the ALJ erred in assigning significant weight to the opinion of Dr. Bowles, a non-examining source, and only little weight to the opinion of Dr. Terrell, an examining source.

Dr. Bowles rendered his opinion on October 16, 2012. He concluded that the evidence revealed that Tanney had a tendency toward drug-seeking behavior. Despite this behavior, Dr. Bowles concluded that Tanney was able to understand and remember and sustain concentration, pace, and persistence on at least simple, repetitive tasks, as well as adapt and interact socially in non-complex work environments with limited social contact. The ALJ concluded that this opinion was entitled to significant weight because it was consistent with Tanney's allegations and the treatment records.

The ALJ's reliance on Dr. Bowles' opinion is not supported by substantial evidence. Dr. Bowles was a non-examining physician, and in general, the opinions of non-examining physicians do not deserve substantial weight. *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001). While the ALJ may give more weight to the opinion of a non-examining physician than an examining physician if the non-examining physician opinion is supported by superior evidence, here there was little evidence to support Dr. Bowles' conclusions regarding the extent of Tanney's mental deficit and the significance of his drug seeking behavior.

Dr. Bowles rendered his opinion in October 2012 without access to many medical records which showed additional psychiatric hospitalizations, adjustments to his psychiatric medications, and the results of objective psychological testing. The records

6

show that after October Tanney had circumstantial or tangential thought process, poor insight and judgment, marginal to fair hygiene, and impaired attention and concentration. He also had difficulty coping with stressors. Despite the ALJ's contention that these symptoms did not constitute particularly serious problems, they are highly relevant to the medical evaluation of an individual diagnosed with significant mental impairments. The ALJ's belief that Dr. Bowles' assessment of Tanney's prior hospital admissions would not change based on his records from after October 2012 is speculative.

In explaining his reliance on Dr. Bowles' opinion, the ALJ noted his belief that Tanney's hospitalizations after October 2012 were the result of drug-seeking behavior; however, the record suggests that Tanney's treatment and hospitalizations were necessitated at least in part by his mental illness. Doctors consistently admitted Tanney for extended treatment and observation. This evidence does not support a finding that Tanney's symptoms were primarily caused by drugs. Tanney was repeatedly diagnosed with major depressive disorder, anxiety, and personality disorder, despite his doctors' recognition that he also exhibited drug-seeking behavior. The ALJ's focus on the few notations in the record suggesting that Tanney was drug-seeking constitutes impermissible cherry-picking from the record to support the ALJ's conclusion.

Furthermore, in January 2013 Dr. Terrell administered Tanney a psychological examination through the WASI-II, Repeatable Battery for the Assessment of Neuropsychological Stats Form A, Brown ADD Scales, and Million Clinical Miltiaxial Inventory-III. These tests revealed that Tanney suffered marked intellectual deficits, his vocabulary and abstract reasoning abilities were poorly developed, he had problems with

7

both immediate and delayed memory, difficulty with tasks assessing concentration and attention, and lacked social initiative. In rejecting these results, the ALJ explained that he believed the WASI-II was not comprehensive, sacrificed accuracy for time, had too wide of a confidence interval, and that Tanney put forth insufficient effort on testing; therefore, he believed the scores were likely not a reliable indicator of Tanney's overall cognitive functioning.

In evaluating the medical evidence of the record, the ALJ "may not draw upon his own inferences from medical reports." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (quotation omitted); *see also McNertney v. Astrue*, 2011 WL 24116618, at *5 (W.D. Mo. June 13, 2011). The ALJ is not a doctor and cannot substitute his own interpretation of the medical records for the doctor's interpretation. Dr. Terrell never opined that Tanney's test results were invalid or feigned, despite noting that Tanney put forth insufficient effort. Dr. Terrell concluded that the assessment was a valid and reliable measure of Tanney's cognitive abilities, and that he would have "severe impairments in his ability to remember information" and likely had ADHD. [Tr. 685]. Given Dr. Terrell's reliance on the results of these tests and belief that the results of the tests fairly represented Tanney's abilities, the ALJ was not permitted to disregard the results based upon his own feelings about the exam.

Therefore, the Court finds that the ALJ erred in giving substantial weight to Dr. Bowles' opinion and discounting Dr. Terrell's opinion. This error is not harmless merely because the ALJ adopted some of the limitations posed by Dr. Terrell, because the ALJ failed to address other limitations that Dr. Terrell found.

On remand, the ALJ is required to further review Dr. Terrell's opinion consistent with this opinion.

### B. Credibility Assessment

Tanney next argues that the ALJ erred in failing to properly assess his credibility. The ALJ concluded that Tanney was not a credible witness because the record suggested that he was drug-seeking, he had inconsistent allegations about his symptoms and the reasons for his inability to work, and there was a lack of medical findings to support his complaints.

In evaluating a claimant's credibility, the ALJ applies the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). These factors include (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) the dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. The ALJ may discount the claimant's subjective complaints of pain if the evidence is inconsistent with the claimant's testimony. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015).

Given the Court's conclusion that the ALJ improperly weighed the medical evidence of the record, on remand the ALJ should revisit his credibility determination. In reevaluating Tanney's credibility, the ALJ should consider Tanney's statements about the extent of his disability in light of the entirety of Tanney's medical history and not rely exclusively on the notations in the record suggesting that he engaged in drug-seeking behavior. If the ALJ is of the opinion that Tanney would not be disabled but for his use of drugs, the appropriate analysis must be applied.

9

Case 3:15-cv-05005-NKL   Document 13   Filed 10/26/15   Page 9 of 10

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for reconsideration consistent with this opinion.

/s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  October 26, 2015  
Jefferson City, Missouri